554 So.2d 506 (1989)
STATE of Florida, Petitioner,
v.
Vaughn R. SIMPSON, Respondent.
Vaughn R. SIMPSON, Petitioner,
v.
State of Florida, Respondent.
Nos. 70512, 70561.
Supreme Court of Florida.
December 21, 1989.
*507 Robert A. Butterworth, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for petitioner/respondent.
Michael E. Allen, Public Defender, and Carl S. McGinnes, Asst. Public Defender, Tallahassee, for respondent/petitioner.
KOGAN, Justice.
We have for review Simpson v. State, 502 So.2d 61 (Fla. 1st DCA 1987), and Simpson v. State, 505 So.2d 1378 (Fla. 1st DCA 1987) (supplementing earlier opinion on denial of rehearing), which certified the following questions of great public importance:
IS THE REGULARITY AND FREQUENCY, i.e., THE TEMPORAL PROXIMITY, OF OFFENSES SCORED ON THE SENTENCING GUIDELINES SCORESHEET A VALID GROUND FOR DEPARTURE FROM THE GUIDELINES RECOMMENDED SENTENCE?
502 So.2d at 62.
WHETHER EMOTIONAL OR PSYCHOLOGICAL TRAUMA IS AN INHERENT COMPONENT OF ARMED ROBBERY AND, THUS, NOT A VALID REASON FOR DEPARTURE FROM THE SENTENCING GUIDELINES?
505 So.2d at 1380. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
Vaughn R. Simpson was convicted in Duval County of several offenses stemming from two separate armed robberies on June 12, 1985, and June 14, 1985. As a result of the first incident, Simpson was convicted of attempted armed robbery, attempted first-degree murder and the use of a firearm during commission of a felony. As a result of the second, Simpson was convicted of armed robbery and aggravated battery. The guidelines' recommended sentence was seventeen to twenty-two years in prison. However, the trial court departed from the guidelines and imposed concurrent sentences of twenty-seven years.[1]
As part of a twenty-one page sentencing order in support of departure,[2] the trial court recited that Simpson since age ten had been arrested sixteen times and charged with seventeen offenses including eight felonies. These were: (1) an assault resulting in a nonjudicial warning in 1975; (2) truancy resulting in a nonjudicial warning in 1975; (3) battery in 1978, resulting in probation with adjudication withheld; (4) *508 aggravated battery in 1980, a charge that was dismissed by nolle prosequi; (5) burglary in 1981, a charge that was dismissed by nolle prosequi; (6) a separate burglary in 1981, resulting in community control; (7) criminal mischief in 1981, a charge that was dismissed; (8) a burglary and violation of community control in 1982, resulting in revocation of community control and commitment to the Florida Department of Health & Rehabilitative Services; (9) aggravated assault in 1982, a charge that was dismissed; (10) prowling in 1984, resulting in a fine of $139 in costs; (11) unlawful use of vehicle registration plate in 1984, resulting in $139 in court costs and forty-five days' probation; (12) battery in 1984, a charge that was dismissed by nolle prosequi; (13) trespass in 1984, resulting in a sentence of ten days' imprisonment on weekends; (14) prowling in 1984, with disposition unclear; (15) failure to appear in 1984, a charge that was dismissed by nolle prosequi; (16) failure to serve sentence in 1984, resulting in a sentence of six days' imprisonment on weekends; and (17) no valid driver's license in 1985, resulting in a sentence of one day plus payment of costs, which apparently was waived.
In further support of departure, the trial court gave the following characterization of Simpson's offenses, taken from police reports. In the first robbery, after ordering two men to lie on the floor, Simpson
asked for a screwdriver and Mr. Marcelli [the victim in the first robbery] told him that he was not going to get a screwdriver and that he was `getting tired of this'. At that point, Mr. Marcelli got off the floor and started toward the defendant. The defendant and Mr. Marcelli moved from around the counter area and the defendant fired approximately three shots in the direction of Mr. Marcelli. Mr. Marcelli was struck, with one of the bullets, in the top right shoulder. The defendant fled the scene on foot.
In the second robbery, Simpson
pointed a chrome plated weapon at [a store attendant] and demanded her to give him the money. The defendant exited the store through the front door after directing the clerk to lie on the floor. After being advised of the robbery, several people who were walking up to the store confronted the defendant in an effort to stop him and one of these individuals [the second victim] ... was shot in the left shoulder by the defendant. The defendant fled on foot... .
The trial court then gave the following specific reasons for departure, in addition to the other reasons already noted:
"1. The regularity or frequency with which the crimes were committed. One attempted armed robbery and attempted first degree murder was committed on June 12, 1985. Two days later on June 14, the defendant committed another armed robbery and aggravated battery.
2. During the two robberies the defendant fired his pistol six times  two of which shots were to intimidate and hasten the victims into compliance. Those wildly fired shots placed persons nearby at great risk. The other four shots were fired at unarmed victims (at one with premeditated intent to murder) and at the other with the intent to kill or maim.
3. None of the four victims were armed  nor did they pose any threat to the defendant. Yet, he shot two of them without provocation.
4. The actions of the defendant at both robberies were those of a deadly predatory animal taunting and terrifying its prey. In addition to the physical injuries, the victims have been emotionally ravaged and psychologically traumatized.
5. The acts of the defendant were not accidental or due to nervousness. If they had been, there probably would have been only one shooting. However, the defendant threatened and shot victims during both robberies  evincing a homicidal intent and a contempt for human life."
Simpson, 502 So.2d at 62.
On appeal, the district court found the first and second reasons valid and disallowed the rest. The district court specifically disallowed the fourth reason based on its finding that emotional trauma was inherent in the offense of robbery and that *509 there was no showing of extraordinary circumstances creating trauma over and above that already inherent in the crime. However, the district court certified questions on the validity of the first and fourth reasons and recognized conflict with Sias v. State, 487 So.2d 1180 (Fla. 3d DCA 1986) (finding that trauma is not an inherent component of robbery). Since we accepted jurisdiction based on the certified questions, the scope of this review will be confined to these two issues alone.
As to the first certified question, this Court on several occasions has addressed the issue of departures based on the timing of crimes committed by a defendant. In Keys v. State, 500 So.2d 134, 135-36 (Fla. 1986), we held that an escalating pattern of criminal conduct demonstrated by a series of crimes occurring over a ten-year period was a sufficient reason for departure. This conclusion was in keeping with our holding in State v. Mischler, 488 So.2d 523, 525 (Fla. 1986), in which we stated that departure cannot be based on "an inherent component of the crime in question." An escalating pattern occurring over a decade is a factor that is not inherent in the offenses currently before a sentencing court, nor is it already factored into the guidelines. See id.; Hendrix v. State, 475 So.2d 1218, 1220 (Fla. 1985).
In Williams v. State, 504 So.2d 392 (Fla. 1987) ("Williams I"), we addressed a similar criminal record. The defendant in Williams I had committed a series of crimes beginning with an arson when he was sixteen years old and escalating over the next six years to include several acts of burglary and aggravated battery. Several of the offenses were committed only months after the defendant's release from prison. Thus, in Williams I we agreed that the escalating pattern of criminality justified a departure sentence. Id. at 393-94.
In State v. Rousseau, 509 So.2d 281 (Fla. 1987), we addressed a departure based on the fact that the defendant had committed three burglaries in a three-week period. Id. at 283. We held:
Each of these three burglaries was scored as a primary offense in determining Rousseau's guidelines sentence. The record reveals no additional facts concerning timing of these offenses which were not already factored into the guidelines score sheet. Therefore, this reason cannot justify departure.
Id. Implicitly, we recognized that timing could justify a departure sentence, but not if (a) all the crimes cited as a reason for departure were scored as primary offenses on the scoresheet and (b) no additional facts were cited to justify the departure.[3]
In State v. Jones, 530 So.2d 53, 55 (Fla. 1988), we again held that timing of offenses could be a valid reason for departure under certain conditions. However, we cautioned trial courts:
Before the temporal proximity of the crimes can be considered as a valid reason for departure, it must be shown that the crimes committed demonstrate a defendant's involvement in a continuing and persistent pattern of criminal activity as evidenced by the timing of each offense in relation to prior offenses and the release from incarceration or other supervision.
Id. at 56. Applying this standard in Jones, we held that the defendant did not evince such a continuing and persistent pattern. In Jones, the defendant had committed a burglary and grand theft about one year after release from prison on earlier charges, and he then trafficked in stolen goods five months later. Id.
*510 In the present case, the trial court's reasons for departure recited two separate factors involving timing. First, the trial court based departure on the fact that Simpson committed one attempted armed robbery on one day and a second armed robbery two days later. If this were the only reason for the departure, we would be forced to conclude that Rousseau controls the facts at hand, since these particular crimes were scored as primary offenses. Thus, without other reasons, this factor would be insufficient to justify departure. Two criminal episodes occurring two days apart are insufficient to establish a continuing and persistent or escalating pattern of criminality.
However, in this instance, the trial court also cited a second set of facts to justify a departure based on timing of offenses  Simpson's extensive prior encounters with the law over a ten-year period. We thus must consider the validity of this reason.
The long list of offenses recited by the trial court consists preponderantly of unconvicted misconduct and offenses for which all charges were dropped or dismissed. This Court has held that departure may not be based on offenses for which the defendant has not been convicted. Williams v. State, 500 So.2d 501, 503 (Fla. 1986) (citing Fla.R.Crim.P. 3.701(d)(11) (1986)) ("Williams II"), receded from on other grounds, Quarterman v. State, 527 So.2d 1380 (Fla. 1988). Accordingly, the trial court in this instance has relied on improper factors in imposing a departure sentence based on timing.
This error alone undermines the validity of the trial court's conclusions, since the judge obviously misunderstood the requirements of Florida Rule of Criminal Procedure 3.701(d)(11).[4] For this reason alone we must disallow the timing of Simpson's various offenses as a reason for departure. Williams II. The unconvicted offenses set forth in a detailed chart prepared by the trial court so clearly dominated the departure order as to constitute a major and inseparable feature of the trial court's conclusion. As a result, the court's departure based on timing is fatally tainted. Nor are we convinced that the offenses for which convictions actually were obtained clearly and convincingly establish an escalating or continuing and persistent pattern of criminality, absent the trial court's error.[5]See State v. Mischler, 488 So.2d 523, 524-25 (Fla. 1986).
Accordingly, timing is not supported by any legally sufficient basis in the record and is an invalid reason for departure in this instance. On remand, the trial court may not attempt to articulate new reasons to support timing as a reason for departure. Our case law clearly holds that
a trial court may not enunciate new reasons for a departure sentence after the reasons given for the original departure sentence have been reversed by an appellate court.
Shull v. Dugger, 515 So.2d 748, 750 (Fla. 1987).
We thus answer the first certified question in the affirmative. However, as recited by the trial court in this instance, Simpson's criminal record does not constitute an escalating or continuing and persistent pattern of criminality that clearly and convincingly justifies departure. See State v. Mischler, 488 So.2d 523, 525 (Fla. 1986). However, we stress that timing may be a valid reason if based on facts that demonstrate the type of escalating or persistent pattern described with approval in Keys, Williams I, Rousseau and Jones, providing the trial court does not rest its conclusion preponderantly on unconvicted conduct. Williams II.
As to the second certified question, several cases have established criteria under *511 which emotional or psychological trauma may constitute a valid reason for a departure sentence. In Casteel v. State, 498 So.2d 1249, 1253 (Fla. 1986), we held:
Psychological trauma arising from extraordinary circumstances which are clearly not inherent in the offense charged may properly serve as a clear and convincing reason for departure. The same reasoning leads us to the conclusion that the emotional trauma experienced by the victim's son who witnessed the sexual assault on his mother may also serve as a clear and convincing reason for departure.
(Citations omitted.) Thus, in Casteel, departure was based on extraordinary emotional trauma inflicted on someone other than the victim, a concern not already factored into the guidelines. Accord § 921.001(7), Fla. Stat. (1987).
Later, in Rousseau we held that
there may be another situation where psychological trauma to the victim may be utilized to depart from a guidelines sentence. We hold psychological trauma to the victim may constitute a clear and convincing reason for departure when the victim has a discernible physical manifestation resulting from the psychological trauma.
Rousseau, 509 So.2d at 284. However, in Rousseau we disapproved psychological trauma resulting from a burglary because "it was the type of trauma inherent in being the victim of a burglary and having one's home violated." Id. at 284-85.
Later, we applied the Rousseau test in a case involving unarmed robbery, kidnapping and sexual assault. In Harris v. State, 531 So.2d 1349 (Fla. 1988), we held that departure was justified because the victim, after enduring extraordinarily traumatizing treatment, had suffered recurring headaches, extreme depression requiring medication and had qualified for workers' compensation benefits as a result of her emotional trauma. Id. at 1351. These symptoms, combined with the extraordinary acts of the defendant, were sufficient physical manifestations of emotional trauma to justify a sentence in excess of the guidelines' recommendation.
We agree with the court below that a certain level of emotional trauma is an inherent component of robbery.[6] The causing of fear and resulting psychological trauma is by statutory definition a part of any robbery.[7] As a result, departure may not be based on emotional trauma arising from a robbery unless the emotional trauma is clearly and convincingly excessive or extraordinary, especially if a victim exhibits serious physical symptoms caused by emotional trauma. Harris. Accord § 921.001(7), Fla. Stat. (1987).
We do not believe the emotional trauma that occurred in this instance is of the type allowed by either of the tests announced in Casteel and Rousseau. The trial court's sentencing order quotes from police reports, noted above, in part to justify departure based on trauma. However, these factual statements do not indicate that Simpson inflicted extraordinary emotional trauma over and beyond that inherent in a robbery. Nor is there any allegation in this record that the victims experienced psychological or emotional trauma so severe as to result in discernible untoward physical manifestations similar to the type described in Harris.
For this reason, we believe the district court correctly reversed the trial court's departure based on emotional trauma. We thus answer the second certified question with a qualified affirmative. Although emotional or psychological trauma of the type described with approval in Casteel, Rousseau or Harris will justify departure, *512 the facts of the present case do not fall within this type.
We quash in part and approve in part the opinion below. This cause is remanded to the district court for further proceedings consistent with this opinion.
It is so ordered.
EHRLICH, C.J., and BARKETT and GRIMES, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion, in which OVERTON, J., concurs.
SHAW, J., concurs in part and dissents in part with an opinion.
McDONALD, Justice, concurring in part, dissenting in part.
I concur with the majority opinion in reference to the victim injury issue as a ground for departure. I disagree with the majority opinion that the escalating pattern of criminal activity aggravating factor is not present.
This young man had a finding of guilt for battery in 1978, burglary in 1981, burglary in 1982, plus miscellaneous misdemeanors. Then the seriousness of his offenses escalated to the two criminal events under discussion, which resulted in a total of four convictions for serious crimes. I believe the trial judge was entirely correct in concluding that he could, and should, enhance the guidelines sentence because of an escalating pattern of criminal activity based on severity and time. Two criminal events two days apart standing alone may be inadequate, but in the totality of circumstances present here they justify a ground for departure.
In any event, a new sentencing order is not indicated. Even discarding the escalating pattern of criminal activity as a ground for departure, the remaining ground for departure is so strong that I can confidently conclude without doubt that the sentence would be the same.
OVERTON, J., concurs.
SHAW, Justice, concurring in part, dissenting in part.
I agree with the majority's answers to the certified questions. I disagree with its conclusion that Simpson's prior crimes fail to demonstrate a continuing or persistent pattern of criminal activity. He was convicted of many offenses, including the following: burglary in 1981, burglary in 1982, prowling in 1984, unlawful use of an auto tag in 1984, trespass in 1984, failure to serve sentence in 1984, and no valid driver's license in 1985. To me, this shows a continuing and persistent pattern of crime and thus justifies departure. I disagree with Justice McDonald's conclusion that this shows an escalating pattern of crime. The offenses appear to be a mixed bag that, in fact, deescalate after the initial burglaries and then escalate with the present offenses.
NOTES
[1] The trial court sentenced Simpson to fifteen years for attempted armed robbery, twenty-seven years for the separate armed robbery, fifteen years for aggravated battery, twenty-seven years for the attempted first-degree murder and fifteen years for use of a firearm during commission of a felony. These sentences were all concurrent.
[2] We do not address any reasons for departure contained in the sentencing order that are not directly relevant to the certified questions.
[3] State v. Rousseau, 509 So.2d 281 (Fla. 1987), does not stand for the proposition that prior offenses can never justify departure, as the state incorrectly assumes in its brief. Rather, the departure in Rousseau was based entirely on the offenses for which the defendant was being sentenced, which themselves did not establish a persistent or escalating pattern of criminality. Since no further facts were established on the question of timing, the departure sentence was invalid. This holding is entirely in harmony with Williams v. State, 504 So.2d 392 (Fla. 1987), in which sufficient additional facts were introduced to establish an escalating pattern of criminality. The state's argument that Rousseau is inconsistent with Williams thus is not well taken.
[4] Rule 3.701(d)(11) provides in pertinent part that "[r]easons for deviating from the guidelines shall not include factors relating to prior arrests without conviction."
[5] After the relevant events of this case occurred, the legislature has changed the standard of proof from clear and convincing to a preponderance of the evidence. Ch. 87-110, Laws of Florida. The parties have not briefed this issue and we thus do not address any matter associated with the enactment of chapter 87-110.
[6] We thus disapprove the opinion in Sias v. State, 487 So.2d 1180 (Fla. 3d DCA 1986), to the extent it conflicts with this opinion.
[7] Section 812.13, Florida Statutes (1987), defines robbery as

the taking of money or other property which may be the subject of larceny from the person or custody of another when in the course of the taking there is the use of force, violence, assault, or putting in fear.
Some degree of emotional trauma necessarily arises from conduct that meets this definition.