573 So.2d 429 (1991)
Sylvester LIPSCOMB, Appellant,
v.
STATE of Florida, Appellee.
No. 89-213.
District Court of Appeal of Florida, Fifth District.
January 31, 1991.
*430 James B. Gibson, Public Defender and Glen P. Gifford, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee and Colin Campbell, Asst. Atty. Gen., Daytona Beach, for appellee.
EN BANC

CORRECTED OPINION

ON MOTION FOR REHEARING OR CERTIFICATION
HARRIS, Judge.
Pursuant to the motion for rehearing filed by appellant, we withdraw our prior opinion in this cause dated September 6, 1990, and substitute the following:
Sylvester Lipscomb appeals his departure sentence entered after a nolo contendere plea to grand theft of a motor vehicle. The facts reveal that Lipscomb committed the crime on September 18, 1988 after being released from prison on March 25, 1988. Because the timing of the new grand theft charge was less than six months after his release from prison on a similar charge, the court departed from the guidelines and sentenced Lipscomb to five years in prison.[1] We affirm.
This case returns us to that mystic land of guideline sentencing where we must attempt to discern what the law is at this particular moment.[2] We recognize that the law in this area remains in a state of flux. A unanimous court told us in State v. Pentaude, 500 So.2d 526 (Fla. 1987), receded from Lambert v. State, 545 So.2d 838 (Fla. 1989) that it was appropriate to exceed the guideline range plus one cell for violation of probation when the reason for violation was sufficiently egregious. Timing was considered sufficiently egregious to warrant departure. The same unanimous court told us in Williams v. State, 504 So.2d 392 (Fla. 1987), receded from Gibson v. State, 553 So.2d 701 (Fla. 1989) that it was appropriate to base a departure from the guideline range when sentencing for a substantive charge on the "continuing and persistent pattern of criminal activity" or "the timing of each offense in relation to prior offenses and release from incarceration or supervision". Even in State v. Jones, 530 So.2d 53 (Fla. 1988) (Jones I), after two of the Pentaude justices had been replaced, the court was still unanimous in holding that timing, now referred to as "temporal proximity" of commission of offenses, was a valid and sufficient *431 ground for departure.[3]
However, the truths of Pentaude, Williams and Jones I were short-lived. Along came Lambert v. State, 545 So.2d 838 (Fla. 1989). In Lambert, we are told by a divided court that it is no longer possible to depart in violation cases in excess of the authorized one cell bump up. The same 4-3 majority confirmed this decision in State v. Tuthill, 545 So.2d 850 (Fla. 1989) and a unanimous court approved this position in Franklin v. State, 545 So.2d 851 (Fla. 1989). A 6-1 majority approved it in Dewberry v. State, 546 So.2d 409 (Fla. 1989). In Hamilton v. State, 548 So.2d 234 (Fla. 1989) a 5-2 majority again held that factors relating to violations of probation cannot support departure.
Even so, it appears that it might still be possible to depart based on timing or temporal proximity in new substantive cases under section 921.001(6).[4] In fact, in Gibson v. State, 553 So.2d 701 (Fla. 1989) the court held that timing, under appropriate circumstances, could be a valid reason for departure in non-violation cases. This truth, however, was somewhat precarious because two justices specially concurred but held that because of the difficulty of determining articulable standards, timing as a factor for departure should no longer be permitted. In Jones v. State, 553 So.2d 702 (Fla. 1989) (Jones II), the court again confirmed that timing was a proper basis for departure. The two justices specially concurring in Gibson now dissented.
But then, in State v. Simpson, 554 So.2d 506 (Fla. 1989), one of the Jones dissenting judges wrote the opinion in which all of the justices seem to agree that "temporal proximity" is a valid reason for departure if it is shown that the crimes committed demonstrate a continuing and persistent pattern of criminal activity as evidenced by the timing of each offense in relation to prior offenses or the release from incarceration or other supervision.[5] The opinion specifically holds:
However, we stress that timing may be a valid reason if based on facts that demonstrate the type of escalating or persistent pattern described with approval in Keys [v. State, 500 So.2d 134 (Fla. 1986)], Williams I [v. State, 504 So.2d 392 (Fla. 1987)], [State v.] Rousseau [509 So.2d 281 (Fla. 1987)], and Jones, providing the trial court does not rest its conclusion preponderantly on unconvicted conduct. Williams II [v. State, 500 So.2d 501 (Fla. 1986)].
Simpson at 510.
From the advance sheets now available to us it appears that timing is an appropriate reason for departure in non-violation cases if the timing of the new offense in relation to the prior offense or other supervision shows an escalating or persistent pattern of criminal behavior. In our case appellant committed grand theft in Virginia and was sentenced to prison. Upon release he came to Florida and within six months of his release from prison committed the present grand theft offense.
While there is some doubt as to what length of time between the prior offense or release from prison and the new offense will justify a timing departure, we have previously held that 11 months is not so long as to prevent departure.[6]Roseman v. State, 519 So.2d 1129 (Fla. 5th DCA 1988). We hold that a new offense within 6 months of release from prison is of sufficient "temporal proximity" to justify departure.
The next issue is whether two offenses can establish a pattern  escalating *432 or persistent.[7] The courts in Frederick v. State, 556 So.2d 471 (Fla. 1st DCA 1990) and McKinney v. State, 559 So.2d 621 (Fla. 3d DCA 1990) hold that two offenses do not a pattern make. We find however that just as two points can establish a line and just as two felonies can establish a habit,[8] two similar violations of the theft laws separated by a short prison term show a pattern of criminal behavior as it relates to taking other persons' property.
For the foregoing reasons, and at the present time, we affirm.
However we certify the following question of great public importance to the Supreme Court:
MAY A TRIAL JUDGE IMPOSE A DEPARTURE SENTENCE IN A NONVIOLATION OF PROBATION CASE IF THE TIMING OF THE NEW OFFENSE IN RELATION TO THE PRIOR OFFENSE OR THE RELEASE FROM INCARCERATION OR OTHER SUPERVISION SHOWS A PERSISTENT PATTERN OF CRIMINAL BEHAVIOR?
AFFIRMED.
DAUKSCH, COBB, W. SHARP, GOSHORN, PETERSON and GRIFFIN, JJ., concur.
DIAMANTIS, J., concurs specially with opinion.
COWART, J., dissents with opinion.
DIAMANTIS, Judge, concurring specially.
I concur in the majority opinion since the defendant committed the instant grand theft of a motor vehicle within less than six months from being released from prison for grand theft of a motor vehicle. Cf. Hernandez v. State, 569 So.2d 857 (Fla. 2d DCA 1990). Therefore, I would phrase the certified question to the supreme court to read as follows:
DOES THE DEFENDANT'S COMMISSION OF A SECOND SIMILAR NON-VIOLENT FELONY WITHIN APPROXIMATELY SIX MONTHS OF HIS RELEASE FROM STATE SUPERVISION FOR THE FIRST CONVICTION DEMONSTRATE HIS INVOLVEMENT IN A CONTINUING AND PERSISTENT PATTERN OF CRIMINAL ACTIVITY WHICH WOULD PERMIT A TRIAL JUDGE TO IMPOSE A DEPARTURE SENTENCE IN A NONVIOLATION OF PROBATION CASE?
COWART, Judge, dissenting.
The legal issue presented is whether, when a defendant commits a second or subsequent offense after having previously been convicted and incarcerated, and three aspects of the prior conviction are appropriately scored on the guidelines scoresheet relating to the subsequent offense, may the trial judge depart from the recommended guidelines sentencing range based on the "timing" relationship (or "temporal proximity") of the subsequent offense to the defendant's release from the incarceration imposed for the prior offense.
The trial court stated the following "clear and convincing" reasons for the departure:
1. The defendant's prior record includes a conviction for the offense of Grand Theft for which he received five (5) years in prison from which prison sentence he was released on March 25, 1988; the instant case on which the defendant has herein been sentenced is for the offense of Grand Theft. (Said instant Grand Theft offense having been committed on September 18, 1988.)
2. The timing of the offense of Grand Theft in the instant case, in that the defendant had been released from prison on March 25, 1988, from imprisonment for the offense of Grand Theft, and within approximately six months of said release committed the offense in the instant case.

*433 3. The failure of past rehabilitation and the improbability of future rehabilitation as evidenced by the defendant's recent release from prison and as evidenced by the fact that the defendant committed the same offense of Grand Theft Auto that he had been recently released from imprisonment for.
4. The offense in the instant case was committed while the defendant was on probation for the offense of Breaking and Entering.
In this case at some previous time the defendant Lipscomb committed a grand theft offense in the State of Virginia, was convicted and sentenced to five years' incarceration, served some time in prison there and was there released on parole on March 25, 1988. Lipscomb came to Florida and committed another grand theft offense on September 18, 1988 for which he received a departure sentence which he appeals.
On Lipscomb's Rule 3.988(f), Category 6 (theft) guidelines scoresheet the Virginia grand theft conviction and related parole were scored three separate ways and times.
First, the Virginia theft conviction was scored on the scoresheet under III A, "prior record" as a third degree felony.
Secondly, the Virginia conviction was scored additional points on the scoresheet under III B, as a prior conviction for a prior category 6 (theft) offense.[1]
Thirdly, the Virginia parole was scored additional points on the scoresheet under IV as legal constraint at the time of the Florida offense.[2]
Notwithstanding that the results of the Virginia grand theft conviction and related parole were scored three times on the guidelines scoresheet, the sentencing judge entered a departure sentence based on the timing of the Florida theft offense for which Lipscomb was scored and sentenced as compared to the date Lipscomb was released on parole from imprisonment for the Virginia theft conviction, see paragraph 2 of the departure order.
It is a natural and normal phenomenon of life and nature that every object or place has characteristics and relationships which serve to identify that object and to relate it to, or distinguish it from, all other objects and places. Objects are frequently identified by color, taste, texture, sound, smell or size but an object's spacial relationship or proximity (location with regard to other objects) is one of the most common factors used to identify and distinguish one object, or to relate it, to another object or place. Such spacial relationships have two common dimensions; distance and direction; thus, reference to the cow in the north pasture, the largest lake in Florida, the city 60 miles south of Daytona Beach, Florida, etc.
In a similar manner every event that occurs has characteristics and relationships which serve to identify that event and to distinguish it from all other events, and to relate it to some other events as well as to often relate it to persons, objects, items and places. Events can be identified and described in many of the same ways as objects (i.e., the shortest trial, the longest sentence, the earliest release, etc.) and in some ways that objects cannot. A common identifying relationship between events is the relationship of cause and effect which often relates two or more events[3] as in this case; thus, the commission of a theft crime caused the Virginia conviction, the conviction caused the sentence, the sentence caused the imprisonment, the imprisonment *434 resulted in the release from prison on parole. There is a direct natural causal relationship between Lipscomb's commission of the Virginia theft offense and his related release from prison on parole.
Each event is but a facet or aspect of, or factor in, the other events in the related string of events. Each is a piece of the whole.[4] To weigh any event is to weigh each of all other causally related events. To separately weigh two or more causally related events making up one larger happening is but a subtle method of double weighing[5] the larger total episodic event. If the prior conviction itself alone does not justify a departure sentence (and it does not because it is twice weighed on the sentencing scoresheet) then the causally related release on parole event (which itself resulted in a legal constraint which was also scored) should likewise, and for the same reason, not be scored. The record in this case does not reveal the date of Lipscomb's Virginia theft conviction. Perhaps for this reason, or because the Virginia conviction was too distant in time from the subsequent Florida conviction (obviously Lipscomb served some part of his Virginia 5 year sentence before he was paroled) the trial judge measured his "timing" reason not from Lipscomb's prior conviction but from his release from prison on parole. This, and the third reason given for departure  failure of past rehabilitation  suggests the departure sentence represents additional punishment for Lipscomb for breaking his Virginia parole. A termination of that parole and required completion of the Virginia sentence is the proper "punishment" for that parole violation.
Just as spacial proximity is the relationship or factor most often used to identify and to relate objects and places, similarly, the temporal proximity of one event to another event is one of the most common factors used to identify and to relate one event to other events. Just as the spacial relationship of two objects have two common dimensions, distance (on a space measuring scale) and direction (normally measured by reference to compass directions or an azimuth or part of a 360° circle), likewise temporal relationships have two common dimensions, distance (on a time measuring scale) and direction, in the temporal sense of forward or backward, that is, one event is commonly noted as being either before (prior to) or after (subsequent to) the other event. Thus Lipscomb's Virginia conviction was prior to his Florida conviction; his Florida conviction was subsequent to his Virginia conviction. Just as everything and everyone has to be someplace, every event has to occur sometime and necessarily relates time-wise to all other prior and subsequent events. All convictions scored on "III.A. Prior Record" occur some time prior to the offense being scored, the only variable factor is the length of time before the subsequent offense that the prior scored offense occurs, or, what the majority opinion holds to be tantamount, how long before the subsequent offense some causally related aspect of the prior conviction, such as confinement or release from confinement, occurred.
As explained above, all events, including prior convictions, have many natural, normal aspects. The guideline scoresheet scores three aspects, or three facets, or three dimensions, of prior convictions: (1) the quantity (number), (2) the quality (degree of seriousness), and (3), by using nine different scoresheets, the prior conviction with respect to the nature of the primary offense at conviction. However, the scoresheets do not undertake to score the aspect of time or temporal proximity of the prior *435 offense to the primary offense at conviction (the subsequent offense for which the defendant is being scored and sentenced). Such a timing aspect could easily be scored by a double set of numbers in each block, one lesser figure as to a more distant prior offense and another larger figure (in parenthesis) for a less distant prior offense, such as, a prior offense that occurred less than 6 months prior to the subsequent offense being scored. If, in the formulation of a proper sentence for the subsequent offense, those who conceived and adopted the guideline scoresheets had considered the timing of the prior offense in relation to the later primary offense to be an important factor, it is logical to assume the scoresheet would have provided for that factor to be scored, in lieu of, or in addition to, the quantity and quality aspects of the prior offense. The fact that the scoresheet does not score the temporal aspect of prior offenses certainly indicates that factor was not considered important enough to be scored. If timing of the prior offense was not important enough to be scored, then the "timing" aspect of the prior offense certainly does not "reasonably justify" (1) being exalted over the quantity and quality aspects of prior criminal records, (2) being allowed to override all other factors that are scored, and (3) does not justify departing from the recommended or permitted guideline sentencing ranges.[6]
Two "timing" reasons and two "pattern" reasons have been asserted as sufficient to justify a departure sentence: (1) timing, (2) temporal proximity, (3) a continuing and persistent pattern of criminal conduct,[7] and (4) an escalating pattern of criminal conduct. All of these reasons relate to some relationship between prior offenses (scored as prior record on the scoresheet) and the subsequent offense for which a sentence is being considered.
The "timing" and the "temporal proximity" factors appear to be the same when they refer to the period of time between a prior offense (or some material aspect of a prior offense, such as, in this case, Lipscomb's release from imprisonment for the prior offense) and the commission of the subsequent offense being scored for sentencing. This is the factor relied on by the trial judge in paragraph two of the order imposing a departure sentence on Lipscomb in this case. For the reasons set forth above, because the time between the prior scored criminal offense and the subsequent offense was considered not significant enough to score, it should not be held a significant enough matter to justify a departure sentence.
The trial judge did not find that Lipscomb's criminal record constituted "a continuing and persistent pattern of criminal conduct."[8] Perhaps recognizing the weakness of the "timing" reason, the majority opinion suggests, advocates and approves this "continuing and persistent pattern"[9] reason for departure in this case, and holds that two offenses of the same quality, *436 neither involving violence, separated by some unknown but some period of time considered "too short" constitutes such a pattern.
While two points do determine and define the length, and delineate the ends, of a line, one straight line of unknown length makes a poor, one-dimensional "pattern" with no depth or breadth, and no temporal dimension.[10] "Pattern", "continuing" and "persistent" are exceedingly subjective terms. If the term "pattern" is not carefully defined by reference to objective criteria, looking for a "pattern" in a defendant's criminal record is like looking for a pattern or figure in the moon, or in the clouds or in the Rorschach test or in tea leaves or in sheep entrails  the process is highly subjective and the result is in the eye of the beholder. One sees largely what one wants to see. Those who do not like guideline sentencing can always say, "I spy a pattern and two offenses show continuous and persistent conduct!"
The second "pattern" reason for departure is "an escalating pattern." This concept is codified in section 921.001(8), Florida Statutes, which authorizes a departure sentence for this reason and defines "escalating pattern of criminal conduct" to be one evidenced by a progression from non-violent to violent crimes or a progression of increasingly violent crimes. This statutorily authorized reason for departure differs considerably from "timing" and the other "pattern" reason in that it focuses on (and compares) substantive aspects of the offenses themselves and not the temporal space between the offenses and, most importantly, it provides clarity in understanding and promotes uniformity in result by defining the term "escalating pattern."
As a practical matter, if two non-violent offenses of the same degree constitute a "continuing and persistent pattern" justifying departure, as the majority opinion holds, then the statutory "escalating pattern" which requires the second of two offenses to be more violent than the first, is redundant. The statutory "escalating pattern" concept should be seen and held to constitute a legislative pre-emption of the field of relationships between the criminal offenses constituting a defendant's prior record of criminal conduct and to be the only timing or pattern concept justifying departure from guideline recommended or permitted ranges.[11]
The trial judge's third reason for departure refers, like the first reason, to the fact that Lipscomb's subsequent offense was for theft as was his prior offense (see note 1 above) and to his lack of rehabilitation. A prior criminal record is always suggestive of the lack of rehabilitation and is an insufficient reason for departure; otherwise there is no need or reason to ever score a prior criminal record.
The fourth reason for departure relates to the fact that Lipscomb was on probation when he committed the offense for which he is being sentenced. That factor is scored additional points on the scoresheet under IV as legal constraint at the time of the offense for which he is being sentenced *437 and is not a valid reason for departure.[12]
Except for a relatively few mandatory sentences, prior to 1983 Florida trial judges had broad judicial discretion in sentencing criminal offenders. In exercising that sentencing discretion, judges considered many factors including the particular crime involved, the circumstances involved in the commission of the particular crime, the particular criminal, circumstances surrounding the criminal including his prior record and any special local need for protection of the public from the particular type of crime or particular type of criminal. Sentences for a particular crime necessarily varied with these factors and with the particular sentencing judge's experience, philosophy and perception of the purposes of sentencing. Variances in sentences bothered persons who either did not understand the factors weighed or did not agree with the factors or the weight given them or the result. Those who would limit judicial discretion in sentencing called sentencing variances "disparity" and argued for "uniformity" in result. It was for the express purpose of reducing or eliminating "disparities" and promoting "uniformity" that the supreme court in 1983 adopted guideline sentencing which limit the factors to be considered and control the weight to be given those factors and thereby provide uniformity but necessarily substantially reduces judicial discretion as a factor in arriving at the sentence actually imposed. Under guideline sentencing the only consequential opportunity for broad judicial discretion is the concept of departure sentences which, if available, permits discretion to dominate. Discretion in selecting and weighing sentencing factors is at odds with uniformity in result. Discretion and uniformity necessarily vary inversely  each exists only as the reciprocal of the other. When recommended guideline sentences are imposed, uniformity prevails over judicial discretion;[13] when departure sentences are permitted, judicial discretion prevails over uniformity. When the guidelines were adopted many persons, including trial judges, were opposed either to the concept or to the particular implementation of the concept. Many still are.
The guidelines originally provided that departure sentences could be imposed for "clear and convincing reasons" (Florida Rule of Criminal Procedure 3.701 b 6. and d 11.) but contained no definition of that vague phrase and no limitation other than that they should "not include factors relating to either instant offense or prior arrests for which convictions have not been obtained." This is very awkward language. "Clear and convincing" traditionally described a certain legal standard for the quantum and quality of evidence as to a particular fact-finding. A poor or bad reason can be stated clearly. Whether a "reason" convinces or not depends more on how willing one is to be convinced than it does on the weight of the reason. That the term and concept of "convincing" is subjective is one of the good reasons for the group judgment of a jury. We were told that the grounds for departure were not stated in the guidelines in order that they might be formulated by the courts and experience and time. In Volume 34 F.S.A. under Rule 3.701, reasons for departure are collected from notes 161 through 370. Notes 371-450 are reserved for downward departures from the guidelines. Seven years and thousands of cases later there is still no certainty and now, apparently, the massive amount of case law may have been rendered obsolete by amendment effective April 21, 1988 (522 So.2d at 374) which eliminated from the guidelines all reference to "clear and convincing" reasons for departure. The new criteria is, apparently, *438 that departures are permitted "where circumstances or factors reasonably justify the aggravation or mitigation of the sentence." The rule now specifies "the level of proof necessary to establish facts supporting a departure from a sentence under the guidelines is a preponderance of the evidence." "Reasonably justify" is no more precise and definite than was "clear and convincing." It does not take much to justify a desired result. Further, this rule change is apparently not widely known. The departure sentence order in this case, imposed 9 months after the rule change was effective, like most current departure orders, refers to "clear and convincing" reasons.
Six years ago this court upheld a departure sentence based on a defendant's record of prior convictions because the guidelines did not expressly state that the trial court could not consider offenses for which the defendant has been convicted.[14] The supreme court quashed because "to allow the trial judge to depart from the guidelines based upon a factor which has already been weighed in arriving at a presumptive sentence would in effect be counting the conviction twice which is contrary to the spirit and intent of the guidelines."[15]
While the supreme court merely held a departure could not be based on a factor already weighed or scored, this holding is often erroneously interpreted as meaning that any factor not expressly scored constitutes a "clear and convincing reason" justifying departure. Further, a factor, expressly weighed or scored, is often subdivided into its more elemental components or related aspects and those components and aspects are then proposed as a reason for departure. Thus began a long series of departure games wherein the trial judge conceived of a supposed reason for departure, often a novelly worded description of some related aspect or facet of some scored factor; this court approved it and the supreme court rejected it.[16] The majority opinion demonstrates that the supreme court has had less than a clear and consistent vision of its sentencing guideline concept.
As the majority opinion makes clear, both the district courts and the supreme court have flirted with the idea of "timing" as a ground for departure. At one time "timing" of the subsequent primary offense as compared to the placement of the defendant on probation or other supervision for a prior offense, or the violation of a condition of such supervision, was approved as a grounds for a departure sentence on the subsequent offense but the supreme court has come to understand that this supposed "timing" is actually duplicitous to all aspects and facets of the supervision violation factor which is itself a specific scoring factor.[17] It should likewise be recognized that the timing of the primary *439 offense as compared to the placement on, or release from, confinement as to a prior offense is but one incident, facet, or related aspect of the prior scored offense and does not justify a departure sentence.
Stated as an abstract legal principle, the trial court holding in this case appears to be:
A DEPARTURE SENTENCE IS JUSTIFIED WHEN THE PRIMARY OFFENSE IS COMMITTED WITHIN APPROXIMATELY SIX MONTHS AFTER RELEASE FROM CONFINEMENT ON A SIMILAR OFFENSE.
The majority opinion approves the above principle and adds the following:
TWO SIMILAR, NON-VIOLENT, SAME DEGREE, OFFENSES, THE SECOND OR PRIMARY OFFENSE OCCURRING APPROXIMATELY SIX MONTHS AFTER RELEASE FROM CONFINEMENT ON THE PRIOR OFFENSE, CONSTITUTES A "CONTINUING AND PERSISTENT PATTERN OF CRIMINAL ACTIVITY" JUSTIFYING A DEPARTURE SENTENCE.
In summary, neither the "timing" reason given by the trial judge nor the "continuing and persistent pattern of criminal conduct" reason adopted by the majority opinion to uphold the departure sentence in this case should be approved as valid reasons for imposing a sentence departing from recommended or permitted guidelines sentences. If those concepts or factors are necessary for formulating a fair and reasonable sentence, the guideline scoresheet should be amended to score them. Authorizing departure on the basis, however articulated or reasoned, of "timing" of one prior offense or the "pattern" of two nonviolent offenses, will substantially impair the guideline sentencing concept, and, as a practical matter, substantially reduce conformity to guideline sentencing except as to first offenders. The real reason for the departure sentence in this case, and its approval on appeal, is not the importance of "timing" or a "pattern" in a defendant's prior criminal record to the formulation of a proper sentence but dissatisfaction with the recommended guideline sentence and the guidelines generally. Some see Florida's sentencing guidelines as badly injured and barely surviving;[18] many who would abolish them are also willing to deliver a subtle but mortal blow and let them hemorrhage internally until they fade away and die. If that result is desired the majority opinion is to be preferred. Some still have hope for the concept while critical of the implementation. This case is either an important milestone or a pothole on the road to the future and fate of sentencing guidelines in Florida.
NOTES
[1] The court stated additional grounds for departure but none of the others were appropriate. However, one valid reason justifies departure. § 921.001(5), Fla. Stat. (1987).
[2] While we seek to discern, from an analysis of the Supreme Court holdings, what the law presently is, the dissent seeks to determine what the law should be.
[3] The lone dissenter believed, unlike the majority, that the facts in the case justified the trial court's determination that departure was appropriate.
[4] It may be argued that subsections (7) and (8) limit the application of section 921.001(6). That is, that the only permitted reasons for departure are excessive victim trauma or escalating pattern of criminal conduct. No decision of the Supreme Court has yet accepted this argument.
[5] Three justices dissent because the Simpson majority found the facts did not show a persistent pattern of criminal activity.
[6] Compare Gibson v. State (14 months too long) and Jones v. State (8 days not too long).
[7] Although the scoresheet reflects the commission of a third third degree felony and a misdemeanor conviction, the record does not reveal the nature of the offenses or when they were committed.
[8] § 775.084, Fla. Stat. (1989).
[1] Obviously the number one and three reasons given by the trial judge for entering a departure sentence are the very reason scored under III B of the scoresheet: to impose a special penalty for a similar subsequent theft offense. (See also reason four.)
[2] The record indicates Lipscomb was also on probation which probation status would also justify points under IV of the scoresheet for legal constraint.
[3] For want of a nail the shoe is lost; for want of a shoe the horse is lost; for want of a horse the rider is lost; for want of a rider the army is lost; for want of an army the battle is lost; for want of a victory the kingdom is lost. George Herbert, Jacula Prudentum 499 (1651); Benjamin Franklin, Poor Richard's Almanac (1758).
[4] The difference between a single act or factual event and a "transaction" or "episode" composed of a series of separate, distinct events which are in some manner related, confuse comparison of the elements of each of two offenses for double jeopardy and due process analytical purposes and is of controlling importance under many statutes and rules of procedure.
[5] Some opinions describe the double weighing of causally related facets or aspects of a larger event as "double-dipping" and disapprove using one facet or aspect as a reason for departure when another related facet or aspect is scored on the guidelines scoresheet, see e.g., the summary of the rationale of Lambert v. State, 545 So.2d 838 (Fla. 1989), contained in Ree v. State, 565 So.2d 1329 (Fla. 1990).
[6] Admittedly there are other factors or reasons that have been held sufficient to justify a departure sentence that likewise fail logical analysis; however, that fact does not reflect a defect in analysis but an illogical reason for departing. An example is an unscored juvenile record. See Johnson v. State, 483 So.2d 855, 857 (Fla. 5th DCA 1986).
[7] In his special concurring opinion in Harden v. State, 561 So.2d 1365 (Fla. 4th DCA 1990), Judge Anstead noted that in Jones v. State, 530 So.2d 53 (Fla. 1988), the supreme court seemed to lock "temporal proximity" to a "continuing and persistent pattern of criminal activity." See also Jones v. State (Jones II) 553 So.2d 702 (Fla. 1989); Gibson v. State, 553 So.2d 701 (Fla. 1989); Marion v. State, 559 So.2d 389 (Fla.3d DCA 1990); Chanquet v. State, 570 So.2d 962, 963 (Fla.3d DCA 1990) (on rehearing). But see, Barfield v. State, 564 So.2d 616 (Fla. 4th DCA 1990) (question certified).
[8] State v. Jones, 530 So.2d 53 (Fla. 1988), and other cases relating to analogous situations, appear to require that the trial court's departure order must find and recite the specific pattern of criminal activity in order to base a departure sentence on that reason. See also Rivero v. State, 573 So.2d 427 (Fla. 5th DCA 1991); Dodd v. State, 570 So.2d 1013 (Fla. 5th DCA 1990); Ellis v. State, 559 So.2d 292 (Fla. 5th DCA 1990); Chanquet v. State, 570 So.2d 962, 963 (Fla. 3d DCA 1990) (on rehearing).
[9] This phrase seems to describe the pattern of criminal conduct that the legislature intended to address and punish by the habitual offender statute, section 775.084, Florida Statutes.
[10] It is interesting to observe that to those who prefer departure sentences to sentencing guidelines a single dimension  a short line between two offenses  is sufficient from which to discern a "continuing and persistent pattern of criminal conduct" justifying a departure sentence, "an extraordinary punishment that requires serious and thoughtful attention by the trial court" (Ree v. State, 565 So.2d 1329 (Fla. 1990). However the same viewpoint considers the guidelines scoring of three different aspects, facets, or dimensions of a defendant's prior record to be insufficient but the unscored temporal aspect of that record sufficient alone to justify a departure sentence. It takes two points of reference to make a line which has a one dimensional length; three unaligned points are required to make a two dimensional plane or surface with length and breadth; four reference points are necessary to make a pattern for a common three dimensional solid object with length, breadth and depth. Time as a fifth point or aspect  a theoretical fourth dimension  is the basis for esoteric metaphysical conceptualizations, such as Einstein's Theory of Relativity, but is beyond the usual rationale for a legal conclusion required by law to be formulated and written by the sentencing judge while still on the bench.
[11] The legislature has also provided a separate punishment for the habitual offender in section 775.084, Florida Statutes.
[12] Of course, if the probation had been revoked before sentencing Rule 3.701d.14 would authorize a one guidelines range increase in sentence. See also, Ree v. State, 565 So.2d 1329 (Fla. 1990). Ree notes that Lambert, 545 So.2d at 841-842, recognizes that violation of probation is not a substantive offense and cannot be the vehicle for a departure under the basic policies of the guidelines. Likewise a parole violation is not a substantive offense and for the same reason cannot be relied on as a ground for departure.
[13] This is true notwithstanding that the guidelines state (Florida Rule of Criminal Procedure 3.701 b. 6.) "... sentencing guidelines are designed to aid the judge in the sentencing decision and are not intended to usurp judicial discretion... ."
[14] Hendrix v. State, 455 So.2d 449 (Fla. 5th DCA 1984).
[15] 475 So.2d 1218, 1220 (Fla. 1985).
[16] Wesson v. State, 535 So.2d 717 (Fla. 5th DCA 1989), quashed, 559 So.2d 1100 (Fla. 1990); Hamilton v. State, 533 So.2d 926 (Fla. 5th DCA 1988), quashed, 548 So.2d 234 (Fla. 1989); Eldridge v. State, 531 So.2d 741 (Fla. 5th DCA 1988), quashed, 545 So.2d 1356 (Fla. 1989); Young v. State, 519 So.2d 719 (Fla. 5th DCA 1988), quashed in, Lambert v. State, 545 So.2d 838 (Fla. 1989); Frierson v. State, 511 So.2d 1016 (Fla. 5th DCA 1987), disapproved in, McCuiston v. State, 534 So.2d 1144 (Fla. 1988), and quashed, 542 So.2d 983 (Fla. 1989); Keys v. State, 473 So.2d 800 (Fla. 5th DCA 1985), quashed, 500 So.2d 134 (Fla. 1986); Lerma v. State, 476 So.2d 275 (Fla. 5th DCA 1985), quashed, 497 So.2d 736 (Fla. 1986); Hankey v. State, 458 So.2d 1143 (Fla. 5th DCA 1984), quashed, 485 So.2d 827 (Fla. 1986); Hendrix v. State, 455 So.2d 449 (Fla. 5th DCA 1984), quashed, 475 So.2d 1218 (Fla. 1985); Deer v. State, 462 So.2d 96 (Fla. 5th DCA 1985), quashed, 476 So.2d 163 (Fla. 1985).
[17] Upon revocation of probation, the trial court is limited to the original guidelines sentence and the one cell increase for violation of probation. Ree v. State, 565 So.2d 1329 (Fla. 1990); Hamilton v. State, 548 So.2d 234 (Fla. 1989); Dewberry v. State, 546 So.2d 409 (Fla. 1989); Lambert v. State, 545 So.2d 838 (Fla. 1989); Ramsey v. State, 562 So.2d 394 (Fla. 5th DCA 1990); Watson v. State, 558 So.2d 1038 (Fla. 5th DCA 1990); Ricketson v. State, 558 So.2d 119 (Fla. 5th DCA 1990); Phaneuf v. State, 557 So.2d 685 (Fla. 5th DCA 1990); Glenn v. State, 557 So.2d 667 (Fla. 5th DCA 1990); Jackson v. State, 556 So.2d 813 (Fla. 5th DCA 1990); Maddox v. State, 553 So.2d 1380 (Fla. 5th DCA 1989).
[18] See N. Holten and R. Handberg, Florida's Sentencing Guidelines Surviving  but just barely, Vol. 73, No. 5 Judicature, pg. 259 (February-March 1990).